the fourth district appellate court of the state of illinois has now convened the honorable craig hd armand presiding morning council we'll call case number 4-22-0370 kenneth hartory versus glenn menchhofer i hope i'm pronouncing those names correctly if uh counselor for the appellant could you please state your name for the record matt heffelfinger from chartwell law your honor all right thank you mr heffelfinger i understand you'll be start starting the argument and then a mr barnett will take the last five minutes is that correct true your honor that's correct thank you and counsel for the appellee could you please state your name for the record yes judge my name is fed or thaddeus gustafson thank you gentlemen counselor for the appellant you may please proceed thank you may it please the court uh i want to jump right i think to the the guts of the issue here and it and it gets to the inspection uh of the 2005 buick on december 7 2017 and the fact that there is a failed weld discovered and if we jump to judge baber's order of january 4 2022 paragraph 9 he basically says that at the very end that crumb trucking knew or should have known on or shortly after december 7 that hardy was injured and that the weld on the seat had broken the problem with the court's analysis in this particular matter is the court failed to recognize the why when at the inspection that occurred december 7 2017 their number we knew that there was a failed well the question is was an original seat was it an oam replacement was it a junkyard seat when was the welding work performed who may have done it all those questions remained unanswered the guzman case which we cite from illinois supreme court specifically says that there's no pre-suit duty on behalf of a defendant that the statute under 13 204 begins to run upon service in this particular case the defendants were left with a situation where they knew that there was a failed well and then once suit was filed efforts were undertaken trying in part trying to figure out what if any cause of action may exist relative to that failed weld and i think it's important that we talk about some cases that speak i think to the issue here that we're really trying to to address and interestingly the knox college versus celitex case from the supreme court in 1981 which originated out of galesburg knox county involved the construction of a campus building and once it was finished in 1970 it began to leak well if you take the position taken by judge baber in this matter as well as the appellee when the roof began leaking the statute of limitation should have begun to run that was enough however the supreme court said that knox college did not know until november 1976 when an independent consultant advised him that the roof problems may have been caused by the celitex roofing system and what's interesting about the case i think is that the case speaks to a spectrum of knowledge and in i want to quote certain portions of the case on page 415 we have held that the event which triggers the running of the statutory period is not the first knowledge the injured person has of his injury and at the other extreme we have also held that is not the acquisition of knowledge that one has a cause of action against another for an injury he has to run when a person knows a reason we should know of his injury and also knows a reason we should have known that it was wrongfully caused and at page 417 the discussion from the court i think is very instructive here to the issues before us here today and it says it is true that knox knew that the roof leak leaked almost as soon as it was completed trial court found this was sufficient to alert knox college of the fact that something was wrong we cannot say as a matter of however that the event started the running of the limitation period evidence may disclose that build-up roofs of this type often leak following installation due to some minor defects in the application material which which are usually easily corrected it may be the nature of the leak and not in the fact that the subcontractor undertook at once to remedy if it were facts which would not cause a reasonable person to investigate further however this is the if not for the first leak at some point along the line knox had sufficient information to put a reasonable person on inquiry as to the nature of the defect in the roof and whether a cause of action existing in favor of knox the point that this that point must be determined by the trier fact and it must determine whether that information was acquired during the five-year property damage statute limitation in that particular case the illinois supreme court said that they knew once knox college knew once they had information from an independent consultant six years after the the rainwater that the roof was leaking from rainwater i want to talk also about the lamana versus gd sirlin company case because it the the three cases i want to focus on speak to i think the issues associated with the spectrum and i think the spectrum is important here because we get to issue of why in the first district in lamana in 1990 looked at a claim from a female that she became infertile as a result of an infection associated with the use of an iud and anyway the uh the question was when that when did she know when did she know that the claim may exist against a product manufacturer and the court said that suspicion is not the same as reasonably knowing the limitation statute is not triggered during the period that a party is attempting to discover whether her injury is wrongfully caused but rather it is triggered at the point when the party reasonably should have known that her injury was wrongfully caused again it speaks to the spectrum mr heffelfinger can i interrupt your presentation here with a question and i'll just throw out a hypothetical let's say you have uh two cars that collide uh in a head-on uh collision uh the uh at doesn't deploy uh results in serious injuries or death to the driver of the other vehicle very apparent uh that uh the collision was one which should have activated the airbag should have resulted uh in its deployment uh but it didn't happen and everybody knows they're aware of that fact it's a readily apparent fact now uh at the uh even though they know that there hasn't been a determination as to why the airbag didn't deploy and there could be several reasons why it didn't it could have been a manufacturing defect could have been an aftermarket modification uh that was made or a deliberate uh uh uh elimination of the airbag feature or a sensor uh in any event in that situation at what point uh does the uh the discovery rule uh uh uh start uh at what point is the defendant who's been sued for the collision itself uh at what point uh is that defendant uh then facing a two-year uh uh discovery rule clock i think that's a great question and i think fundamentally the answer to that question is going to be it's going to be determined based upon the the circumstances of that particular situation the first question obviously that would be have to be addressed is who manufactured the airbag correct and uh and then the uh issues attendant to you know why the the failure may have occurred or not occurred but uh i think knox college and i'm sorry to interrupt that's okay does knox college uh uh indicate that that those are questions that have to be answered or those are facts that have to be gleaned before the discovery rule uh uh before uh discovery uh kicks in or the discovery rule kicks in or is it just simply enough that uh the parties are aware uh that uh something failed and that is the operative fact uh that starts the running of the two years i think that something failed is is is a is a point but i don't think that's the trigger point i think the trigger point has to be at some point after that just because something failed doesn't necessarily mean there may be a cause of action there has to be requisite knowledge that would that that would exist and the question is where along the spectrum does does that exist and that's why i go back to knox college because here they had an independent consultant that told them that the the reason that it was leaking is because of cellotex product and that was six years after the leaking starter thank you uh may i proceed please okay i also want to just talk briefly about the young versus mckee case which is a first district case out of 19 in 1999 and that was uh a uh gentleman passed away after approximately eight days after being admitted to the hospital they got to act it was a malpractice matter there were two expert reports the second expert report basically said that the decedent died from a cardiac arrest there was then an attempt to add dr mckee uh certainly two years beyond the time frame and i think this this case is important because again it speaks to the spectrum it speaks to the issue of trigger and in page 390 of that opinion the court said the statute is not triggered during the period in which the party is attempting to discover whether her injury is actionable instead limits limitations period commences when the party possesses enough information concerning her injury to apprise a reasonable person to the need for further inquiry to determine whether a legal wrong has been committed suspecting wrongdoing is not the same as knowing that a wrong was probably committed whether a party possesses the requisite knowledge contemplates an objective analysis of the factual circumstances involved the focus is on what a reasonable person would have known under the circumstances not on what the particular party suspected i think this is important because it gets back to your honor at some at some level your question is posed to me and the question is it speaks to at what point do you have the requisite knowledge to be able to for that statute to trigger and i think that's going to be a case-by-case approach it's clear based on all the cases that have been cited in the briefs that every case rises and falls somewhat on its facts so here you know when we look at you know the judge baber cites the nolan case but the nolan case the facts support the appellants in this matter in terms of the period of time that he had worked around asbestos as an asbestos insulator and then the question is is when did this when did the running of the statute of limitation trigger and the court said in that particular case it's a question of fact and i think what's important here in this in this particular setting is that just just discovering the fact that say an airbag did not deploy that's not the why that's something that leads us to to ask the question of why and then the question becomes when do you when do you when do you acquire that requisite knowledge and guzman tells us that we don't have some duty pre-suit to engage in some anticipatory relief designed to try to figure out who who may be responsible or why this occurred the why is what's important here but the thing about is even if we did ask ask yourselves what we would have records that basically don't identify that the seat was welded records that don't identify that the seat was replaced the record in question is dated april 5 2015 and says that the the seat track was repaired and their argument that we should have taken depositions that's akin to arguing in a situation let's say that there's some type of uh let's say there's a railroad accident and they're saying that the uh uh they're saying that we that if the railroad track was the documents say the railroad track was repaired that somehow we have an affirmative duty to then take depositions that speak to how what what may have occurred with respect to the locomotive itself we there was no good faith basis for us to take any depositions based upon the documents and i think it's interesting just it's in their record but when they even answered the third party complaint they didn't they couldn't even admit that they replaced the seat they said upon information and belief i'm talking about the appellee so the first time we had any any knowledge that would answer the why was when we took mr hardy's deposition which we for the records is clear was delayed because of kovid we'd have taken that deposition in may per court order in may and and then this would not be before your honor your honors here today so in the end we think this is clearly a question of fact we think that that at some level the conduct of steve smith now in garage in terms of the lack of information from its record keeping and all it is and and the ultimate deposition testimony that they replaced the seat and the done for them was to look to turn the seat upside down and they could see the vaccine the bad well that that they that they that was on the seat that they replaced these are these are fact questions that need to be addressed by a jury in this matter this was this was this we believe that this is a miscarriage of justice to allow this order to stand from judge baber thank you thank you mr heffelfinger mr barnett we have five minutes thank you your honor uh if you may please the court uh co-counsel opposing counsel i think it's important to emphasize here that analyzing when a person knows that an injury both occurred and was wrongfully caused are questions of fact to be resolved by the jury and the district court here improperly resolved the questions of fact that are supposed to be for the jury on a motion to dismiss mere suspicion that there was a wrongdoing or that the injury may have been wrongfully caused is insufficient to trigger the statute of limitations as a matter of law as set forth by the cases that my co-counsel cited in his opening remarks in addition to the cases that my co-counsel cited i'd like to bring to the court's attention the nolan v johns manville asbestos case from the illinois supreme court which my co-counsel did point out judge baber actually relied upon but favors the opponents here in that case the plaintiff nolan he knew that he had lung issues and health issues from his lungs for a period of years in fact he even went so far to get an x-ray that confirmed that he had lung issues subsequent to that x-ray he was diagnosed with pulmonary fibrosis then after that diagnosis he was diagnosed officially with asbestosis which a doctor informed him was a result of working in and around asbestos the illinois supreme court held in that case that it could not as a matter of law determine that even though the plaintiff had lung issues and health issues from his lungs for years that the statute of limitations triggered when he first got that x-ray confirming that he had lung issues the illinois supreme court held it could not determine as a matter of law that the statute of limitations triggered when he was diagnosed with pulmonary fibrosis instead the illinois supreme court held there was a question of fact a question of fact as to whether the plaintiff in that case reasonably knew that his injury was wrongfully caused by his exposure to asbestos in his workplace and interestingly with the knox case that case it was decided on a motion to dismiss and the illinois supreme court uh reversed the district court decision to affirm dismissal and as noted by co-counsel the mere fact that there was leakage immediately after the roof was constructed was insufficient as a matter of law to determine that the statute of limitations triggered because the evidence may show that that type of defect is customary and may be uh rectified in a quick manner here on a motion to dismiss the the district court decided questions that are supposed to be reserved for for the jury and in doing so the district court essentially imposed the same statute of limitations on the defendants in this case as plaintiff would have to bring a claim against smith and allen garage and that's improper and it's improper because plaintiff knew all of the underlying facts plaintiff knew that he had his one he knew that he sat on his seat and that the seat broke he know that afterwards he then took his seat to smith and allen garage and asked him to weld it he then knew that he went back to smith and allen garage and had them replace his seat and plaintiff received invoices in connection with all that work and knew or should have known what those invoices meant plaintiff knew the who what when where why how we did not have that information so this goes back to the airbag hypothetical if the plaintiff in that case knew that they had their their airbag worked upon or replaced if the defendant in that set them discovery one would expect that the plaintiff would say hey here's where i got my repairs done here's the work to the airbag we sent discovery requests asking plaintiff to identify repair work he said he could not remember he did not have invoices and at the time he's living in an assisted living facility he then referred to us to four repair shops we sent subpoenas to those repair shops we got the invoice records when we're asking plaintiff in his deposition to identify when and where he got his seat welded he can't tell us he describes the invoices as being cryptic well this is the individual who hadn't worked on this is the individual who paid for those invoices and he can't tell us when or where he had his seat welded and he agrees that there's nothing in those invoices that shows that his seat was even welded in the first place when we show those same invoices to smith and allen garage representatives and the technician who welded and subsequently replaced plaintiff seat he agrees there's nothing in those invoices that show that the seat was welded so mr barman could i interrupt you uh is there uh does the record uh demonstrate what the uh the speeds of the vehicles uh were at the time of the collision i believe that that may be in the sense key record in the appellate record but i'm not 100 sure whether the speed of the vehicles are actually set forth in in the record in terms of the record uh what's in the record for us to consider uh can you characterize the nature of the collision yes so plaintiff was traveling down the highway he's going about 50 miles per hour and our semi-truck driver going to speed limit at 60 rear end sim and from there uh plaintiff's vehicle then continues down the road ends up in the ditch and goes over a median but what did plaintiff's vehicle collide with the our truck driver rest pardon me yes what did plaintiff's vehicle collide with when it ultimately came to rest uh it didn't collide with anything your honor it came to rest in the median it stayed upright it didn't flip over or anything like that okay didn't go over the median uh quickly and it looked like it was impactful on the vehicle on the thank you mr barnett your time is up you'll have an opportunity in rebuttal uh mr gustafson you're on mute mr gustafson thank you judge thank you your honors uh may it please the court counsel um judge it seems like there's a lot of focus and there should be on the inspection of the vehicle and then we have in the record the semke forensic report in that report the examination of the vehicle was performed on december 7 2017 and it was attended by the plaintiff's counsel and counsel for the defendant from trucking and mentroffer and it was also attended by their retained engineering consultant in addition to the plaintiff's engineering consultant and in this report we have pictures of the vehicle we have description of the accident and we also have information as to what was done at that inspection and in particular it is at the request of from trucking's expert consultant that the driver's seat be disassembled so that the seat cushion can be exposed and the seat frame can be exposed because they know from the accident and looking at the car that the seat has been displaced rearward they have all this information their expert says i need to tear the seat apart so we can examine it and when he tears it apart and examines it and we have photographs we see that the that the in the that there is a fracture there's a weld on the seat frame that is fractured in addition to another weld and the report concludes that disassembly of the driver's seat revealed that the lower right and left seat connections were previously welded this is knowledge they had at the time of the inspection with their expert there that knowledge carried over when defense counsel appeared in this case could you restate that again in terms of what the evidence was you said that evidence that it was previously welded yes well does that mean that that was not a factory weld but it was demonstrating it had been re-welded yes judge i well it doesn't go into particulars about that but these are experts in attendance they would know and should know about the ability to obtain you know information about the vehicle and their parts and everything else and i i think it's pretty basic knowledge that a seat frame is one unit that is not welded and when you look at this in this report that the weld that there's a weld on the frame there should be one solid piece there's a weld there and that's where the fracture occurs and the evidence is there in the record supporting what you just said that it's basic uh knowledge uh that uh this shouldn't have been uh welded uh uh that it was apparent that this was something that happened after the well at that point i mean all i can tell you your honor is that the report states disassembly of the driver's seat and this is at page nine of the sempte report disassembly of the driver's seat revealed the lower right and left seat connections were previously welded however the fractured lower right seat connection was caused by the rear end collision so they note that there was a previous weld made to the frame of this seat part of what he's asking i think is who among us knows and is it common knowledge that welds like that don't occur in the original manufacturing process i think but just here justice harris is asking in terms of what in the record shows that that is so self-evident that it becomes what a matter of judicial notice or common knowledge i i certainly don't know that well judge i think that we have to look at this in the situation in the facts of this particular case we have two mechanical engineers who are present and who tear apart the seat and document there's a previous weld they are also in detroit i'm sorry it would be a previous weld if it happened in detroit when it was originally manufactured that's the fact behind this observation of the engineers and maybe they could have said you know this isn't this is an original manufacturing this was done previously means before it doesn't mean it doesn't tell you when before right but it tells it gives you the information of a wrongful cause we know that there's a weld that is fractured we know that it's that it's in this condition following the accident so that the defendant is on notice that there is a problem with this seat frame and that it was previously welded and it broke at that point where the weld was at well is there any evidence establishes the point of failure but you equate that with wrongful causation but is it dependent on the forces involved and i was asking earlier about the speeds involved if you had two vehicles colliding head on at 70 miles an hour each it might be much more plausible that a seat frame could separate from its point of attachment just simply by nature of the extreme forces involved and that wouldn't necessarily point to a wrong being wrongfully caused whereas if you had a relatively minor collision with not nearly as much force involved and if the seat became detached then you could much more clearly identify it as having occurred wrongfully so is that getting then into a back question that mr heffelfinger mr barnett were discussing well judge i i don't think it it really matters because what matters is that there is a fractured weld and that they've was previously welded and now it's fractured that i'm saying council can i ask a question by saying previously welded is there any distinction in the report that there were factory welds versus some after factory well no your honor the the report doesn't state that okay does the report say that there shouldn't be welds at all in a factory seat frame no the report doesn't say that judge but i think that's kind of the point that we're getting at in some of these questions is there anything in the report itself that puts anybody on notice that there's something different about these welds than might exist at the time it leaves a factory the report itself doesn't say that but i think we can we can i think it's pretty reasonable to assume that we have engineers that have looked at this that they have the ability and the knowledge to check you know on how a car is built and how a seat frame is built it just sounds like they didn't put it in writing anyway right exactly but all i can do is tell you the report says all right so and that's the sole basis for the uh the motion to dismiss uh because you're resorting to the discovery rule and the basis for the trial court's uh decision i mean so we have to look at what's in the record and you're saying it's not in the record but what's in the record judge is that there is a fractured fractured frame on a seat and it fractured at the point of a weld so that is the wrongful cause that and so what the the basis of this third party complaint is that this fractured weld somehow contributed to causing the plaintiff's injuries so they're on notice they have this knowledge of a inspection which carries over to when counsel appears in the case on august 22nd 2018 and once they have knowledge that this injury could be wrongfully caused because this the weld failed in the seat frame then they have an obligation to pursue knowledge to develop knowledge for a cause of action it doesn't matter who did it it doesn't matter when it was done it's done it's knowledge that you have that that could contribute and cause the injuries to the plaintiff therefore you have an obligation to conduct your discovery and make your determinations running from that point in time mr mr gustafson do you acknowledge that uh or concede that the uh uh the uh experts report does not foreclose the possibility uh that this was a factory well the report doesn't say one way or the other your honor right it doesn't say by by inference then are we at a point where somebody should have asked we can just figure out who should have asked or should have been alerted that maybe you had to talk to the manufacturer maybe that question had to be asked of the manufacturer well judge i believe that that's you have a retained consultant who looks at the seat frame and knows vehicles and can get the drawings can get the manufacturing specs for the vehicle and can determine how a frame is built originally and can also determine from parts and serial numbers whether this was an original seat or not an original seat the point is they could have done those things but there's no record that they did anything mr gustafson it is your argument and the argument that you made in support of your motion to dismiss uh dependent um on uh this not having been a factory weld no it's not dependent on that at all it's an apparent clear piece of evidence judge that a weld existed on the frame of the seat and that the weld fractured and the report says because of this accident that's the information when and who did it really doesn't matter because what matters is they you have that knowledge right at the beginning of free suit but then that knowledge carries over and you have an obligation to perform discovery and to investigate to determine those things you've got two years to do it and in order to be wrongfully caused uh according to your uh theory uh we have to uh accept that a weld should not fail uh if it does fail then that is wrongfully caused correct and just like in the airbag situation that i believe uh one of the judges uh provided a hypothetical to once it's discovered the airbag didn't activate you have to follow up and investigate and and determine when what what was the cause of it not activating the fact that it didn't activate though is the wrongful cause and therefore the statute begins to run and that's what we have here we know there's a wrongful cause as judge baber even determined it's clear subjective that we have a failed well that's what they knew it doesn't matter who did it that's not the analysis under the statute of there isn't there's another council argues that they didn't have enough information there it's their job to develop the information to discover the information to investigate you know um i hate to jump around but there was some you know when we talk about you know the the timeline involved in this this matter you know we have the incident in october of 2017 the inspections december of 2017 there are letters that between counsel for the plaintiff and counsel for the defendant from trucking pre-suit leading up to the point when the regarding the repairs done to the car that they are requesting an immediate depth regarding repair of the car seat and these are letters from february of 2018 april of 2018 and may of 2018 right when the right but when the lawsuit is filed because even plaintiff's counsel is saying i know you want to depose the plaintiff early because you want to get information about the repair to the car seat when this is happening i'm sorry i apologize when is the earliest acknowledgement uh there that you just referenced uh that it was a repair uh to the seat there's a letter february 7 2018 that's the earliest is that right correct judge and that's pre-suit february 2018 i don't i know if i said 17 it's february 7 2018 um and then it's followed up in april of 2018 and may of 2018 there are letters back and forth recognizing the importance of it of determining repairs done to the car and wanting to depose the plaintiff on that issue and then nothing happens defense counsel files their appearance in august of 2018 they don't send discovery to the plaintiff until five months later and the discovery that they send doesn't ask specifically about welding when was the seat welded when was welding repairs performed on the seat frame it asked for repairs in general they don't they don't request the plaintiff's deposition until may 16 of 2019 after real after stating in february of 2018 and april of 2018 how important it is to depose the plaintiff immediately they don't send out a notice until may 16 of 2019 setting the deposition for july 8 of 2019 they don't after they get the answers to the written discovery which discloses the repair facilities there are three of them that have performed repairs on this car they don't subpoena records from those repair facilities for another seven months and then when they get the records they the record from my client from smith and allen garage which counsel referenced identifies that the car seat track was replaced they know that the focus of this case in the exit from the examination of the seat is all about this seat frame and yet they don't want they don't bother to subpoena anyone from smith and allen garage about this invoice that shows a seat track has been replaced they don't know what it means but they don't bother to depose anyone to find out they don't subpoena them for a deposition and they don't take the plaintiff's excuse for not taking the plaintiff's deposition that he was in a nursing home and there was covid well there is a tremendous amount of time a year and a half goes by before covid comes in march of 2020 and then after covid we haven't even gotten into that issue but there's a whole issue about you know equitable tolling which i argue in my brief was not brought argued and it's waived because it wasn't brought up in any of the briefs but their plaintiffs are epaulant is arguing that that these excuses for why the the discovery wasn't done and then they say that they didn't find out enough information that smith and allen repaired this car seat did the weld until they took the plaintiff's deposition well again the only thing they obtain in the deposition of the plaintiff is the who they find out well smith and allen repair uh welded the car seat again finding out who has nothing to do with the running of the statute of limitations all right thank you mr gustafson your time is up thank you judge council for the appellant thank you your honor just briefly uh first of all there's a lot of arguing of facts by counsel for the appellee which uh to me speaks to the to the heart of this issue in many respects that this issue is something that the trier fact should decide mr helpethinger let me interrupt you here uh mr gustafson uh referenced two letters one february 2018 one april 2018 and i'm just looking at his brief uh page three he says uh plaintiff's council wrote to a defendant's attorney uh i don't know if that was you or somebody else uh on april the 19th 2018 and in that letter stated uh quote since you are requesting an immediate deposition and follow-up regarding the repair of the car seat and uh so on uh it identifies in that letter repair of the car seat so it would seem that there was information at least in the form of that that would uh confirm that there was a problem with uh the car seat that this wasn't an original factory weld uh that had broken but uh there was somebody here plaintiff's council is noting a suspicion that there was a problem with the car seat and that it had been repaired what do you say to that i think your your use of suspicion is is is a good word here because the question is we to you it was it was a the question of whether it was repaired and whether the plaintiff had any knowledge of the repairs and it's all it is is a suspicion that's it that's all we knew that's so that that was the the hunch if you will and the and those letters resulted in mr robertson mr hardery's council to go ahead and then uh file suit uh there's a reference from him basically implying that hey if you want to do this let's just go ahead and get suit basically saying that i'm not going to allow this deposition that you want to proceed right now thank you council it looks like mr hasselfinger it looks like we have lost justice connect his internet probably has malfunctioned in some fashion i don't know whether he's able to hear us or not if we could perhaps take a moment to find out what exactly is going on there do you have any objection to that no your honor mr augustin or mr barnett do you have any objection if we break for a moment to find out what the situation is with justice connect no judge no your honor all right thank you all right mr heffelfinger uh we're going to give you three minutes which adds about 30 seconds on to uh the time that you actually had because i think it took us about 30 seconds to realize that justice connect wasn't with us anymore and to get that resolved so you can start up where you wish okay you're on you're on mute sir thank you your honor apologize uh just briefly uh the uh the argument from the appellee ignores the uh knox college versus sellotex case i think that case is particularly important for the that the independent consultant identifying sellotex was at least in part enough to defeat the dismissal of the uh the complaint here all we're all we have is we have uh a well that's discovered that is broken after the accident and uh the question becomes is is why and just like in knox college there is six years go by there was time spent trying to determine the why written discovery was propounded the plaintiff who has the requisite knowledge in fact testified that he sat in the seat and it broke resulting in him taking the vehicle to steve smith mountain garage at which time it was welded uh doesn't doesn't identify anything in his answers to interrogatories what more are we supposed to do at that point we issue subpoenas those subpoenas come in and the one from steve smith now garage the appellee's council said it says the seat track was replaced that's not true the invoice april 5 2015 says the seat track was repaired that's markedly different than saying the seat was replaced or a weld occurred there's nothing in those rec 49 invoices that identify anything specific to welding or replacement of the seat furthermore that particular invoice doesn't even tell us which seat was involved which seat track was even involved so in the end all we had as of 12 7 17 was suspicion writing the letters obviously spoke at some level to to the recognition that we're trying to figure out the why and suit was filed in the process the suit then runs its course and then you the the bottom line is the deposition the plaintiff would have been taken in may this information would have been discovered the claim would have been filed well wouldn't the why council wouldn't the why be the seat track broke what you're actually looking for is how or who no the seat track the seat track did not was not involved in this this accident at all your honor well i mean but your knowledge at that point yes your experts reports was the other thing to clarify real quick this empty forensic report that they're referring to that's the plaintiff's report not our report i want to make sure that's clear in the record that's our report but but the bottom line is is you know we get the records and the question becomes they're they're critical of us for not taking a deposition the question is what was a good faith basis to take the deposition a deposition we we had inter answered interrogatories from the plant that didn't identify any work and then we have invoices that don't identify any work either welding or replacing a seat we we were still basically at square one we weren't in position to know until we took the plaintiff's deposition we took as quickly as we could under the circumstances and five days thereafter we sought leave to file because we had information as to potential potentially to the why thank you counsel thank all counsel the court will take this matter under advisement the court stands in recess